UNITED STATES of America,
Plaintiff-Appellee,

v.

Manuel MENDEZ–RODRIGUEZ,
Defendant-Appellant.

No. 71–1238.

United States Court of Appeals,
Ninth Circuit.

July 13, 1971.

Rehearing Denied Dec. 3, 1971.

Kilkenny, Circuit Judge, dissented and filed opinion and voted to grant the petition for rehearing.

Edward A. Infante, of Pedersen & Flowers, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Robert H. Filsinger, Chief, Crim. Div., Catherine A. Chandler, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before JERTBERG, DUNIWAY and KILKENNY, Circuit Judges.

JERTBERG, Circuit Judge:

By indictment filed December 17, 1969, appellant was charged:

1) In Count One with conspiracy to smuggle aliens into the United States, in violation of 18 U.S.C. § 371, and 8 U.S.C. § 1324. One overt act of said conspiracy alleged that appellant transported, in the Southern District of California, aliens Juan Espinosa-Nunez, hereinafter Nunez; Remberto Ordorico-Gomez, hereafter Gomez; and Ramon Guerrero-Berumen, hereafter Berumen.

2) In Counts Two, Three and Four with transporting, within the Southern District of California, alien Nunez

(Count Two); alien Gomez (Count Three); and alien Berumen (Count Four), in violation of 8 U.S.C. § 1324 (a) (2).

Appellant, an indigent, represented by court-appointed counsel, pleaded not guilty to all the charges contained in the indictment, and was tried to a jury. At the close of the Government's case, and on motion of his counsel, Count Two (Nunez) was dismissed. The jury returned guilty verdicts on the remaining counts. Appellant was committed to the custody of the Attorney General for a period of three years on each count, the sentences to be served concurrently. Imprisonment for all but two months was suspended, and appellant was placed on probation for three years.

Appellant, represented by court-appointed counsel on this appeal, prosecutes the same *in forma pauperis*.

Appellant's only specification of error on this appeal is stated by him as follows:

"The trial court erred in denying Defendant's motion for a dismissal of the charges against him when it appeared that the Government had returned three eyewitnesses to the offense for which Defendant was charged, to Mexico before Defendant had an opportunity to interview them."

Appellant does not question the sufficiency of the evidence to sustain his conviction. He does not bring into question any ruling or action of the district court, made during the course of the trial, except the refusal of the court to dismiss the indictment for the reason alleged in his specification of error. For such reasons we deem it necessary to set forth herein only those matters which place in proper context the basis for appellant's specification of error.

Following the return of the indictment, upon learning that there were six Mexican male passengers riding in appellant's car at the time of his arrest, appellant's counsel moved the district court for an order requiring the Government to disclose to appellant the names and whereabouts of the three who were not mentioned or named in the indictment, and to require the Government to produce them at the time and place of appellant's trial, or in the alternate, to dismiss the indictment.

A hearing was held on said motion on January 29, 1970. Government counsel stipulated that after the Immigration and Naturalization Service, hereafter Service, had interviewed said three persons following the arrest of appellant, said persons were returned by the Government to Mexico. Government counsel stated that it would be impossible to produce said persons at the trial since they were in Mexico and the Government was without power to subpoena them for the trial. He further stated that it was appellant's burden to produce said witnesses at the trial but that he would furnish appellant with the names of such persons and such addresses in Mexico as the Government possessed.

The court denied appellant's motion requiring the Government to produce said persons at the trial but ordered the Government to furnish appellant with the names of such persons and such addresses in Mexico as the Government possessed. Appellant's alternate motion to dismiss the indictment was denied.

By letter dated March 5, 1970, Government counsel furnished to appellant's counsel the following information:

"The names and addresses of the unavailable alleged 'witnesses' in the above-entitled case are the following:

1. Felipe Barrientos-Tapia
   Domocilio Conocido
   Pomalquaro, Panadiquaro
   Michoacan, Mexico

2. Roberto Hernandez-Novarro
   Calle Aldama #90
   Ahuacaltan, Nayarit, Mexico

3. Santos Casas-Ceballos
   Calle Reforma (No number)
   Jerez, Zacatecas, Mexico"

The letter further stated:

"The available witnesses will be available for interview on the morning of trial if they are willing to discuss the case at that time."

On April 21, 1970, appellant filed a motion to dismiss the indictment on the ground, *inter alia,* that the conduct of the Government in returning to Mexico three eyewitnesses to the offense for which appellant was charged, before appellant was afforded the opportunity to interview them, constituted a denial of rights guaranteed to the appellant under the Fifth and Sixth Amendments to the Constitution of the United States.

An evidentiary hearing on appellant's motion was held in the district court on May 14, 1970.

It appears from the transcript of the testimony at such hearing that it was and had been the policy of the Service, in the Southern District of California in cases of the type before the court, that when several or more aliens are apprehended while being illegally transported in the Southern District, three or four of them are detained and held in the Southern District as material witnesses so as to be available at the trial of the person charged with such illegal transportation, and to interview the remaining aliens who had been apprehended and then return them to Mexico. The reason assigned for such policy is to avoid the financial burden which would otherwise fall upon the Government in retaining and supporting such persons until the occurrence of the trial of the person accused of illegally transporting them, which period of time, because of the congested court calendars in the Southern District of California, might be five or six months or longer.

The above policy was carried out in the instant case. Following the arrest of appellant, three of the six Mexican male passengers in the station wagon (Nunez, Gomez, and Berumen), were detained as material witnesses and by the Service were placed as farm workers on farms in the Coachella Valley, some 115 miles from San Diego, where they remained until appellant's trial. One-half of the wages earned by them during such period was paid currently, and the other one-half was retained and paid to them when they appeared as witnesses in appellant's

trial. The remaining three, after being interviewed by the Service, were by the Government returned, or permitted to return, to Mexico.

The transcript of the hearing discloses that after appellant had been furnished the names and addresses of the three aliens who had been returned to Mexico, counsel for appellant caused, under date of April 10, 1970, letters of inquiry to be written and mailed to the Chiefs of Police of the Mexican communities in which they were purportedly residing, inquiring as to the presence of such persons in such community. Appellant's counsel received answers from two of the letters stating, in substance, that the person inquired about could not be located and was unknown in the community. No reply was received in response to the third letter.

The district court denied appellant's motion to dismiss the indictment.

Said motion was renewed at the commencement of appellant's trial on May 26, 1970, and again denied.

On trial the Government's case consisted of the testimony of Nunez, Gomez, and Berumen, and an inspector of the Immigration and Naturalization Service.

In substance, each of the aliens testified that he was a citizen of Mexico and had no papers permitting him to enter the United States; that on December 8, 1969, six Mexican males, including themselves, entered the United States on foot, from Mexico, near Tecate, California; that the group was guided by a Mexican National known as "Skinny;" that the group walked for approximately three hours in California after crossing the border, and stopped beside a highway. Shortly a station wagon, driven and solely occupied by the appellant, stopped and the six men entered the car which proceeded in California until the car was stopped at Temecula, California, and appellant was arrested by the Service.

The Immigration Inspector testified that after informing appellant of the charge against him and of his constitutional rights, appellant, in substance,

stated to him that while returning to Los Angeles from a visit to Tijuana, Mexico, he stopped at Oceanside, California, early in the morning of December 8, 1969, for coffee and went into a bowling alley there, and while there he was approached by some men wanting a ride to Los Angeles; that they told him they had no papers so he agreed to take them around by Highway 76, over to 395, and north to Los Angeles; that when he saw the officer at the checkpoint at Temecula, then all tried to scramble out of the car.

Appellant testifying in his own defense stated, in substance: that he was a citizen of the United States and lived in Compton, California; that on the night of December 8, 1969, he was returning to his home in his station wagon from a business trip to Tijuana, Mexico; that in the early morning hours he stopped on the outskirts of Oceanside, California, at a bowling alley for a cup of coffee; that as he was leaving, a person signaled to him, whereupon he stopped his car and the person asked for a ride to Los Angeles; that the person making the signal was joined by five other persons; that he consented to give all of them a ride; that later the car was stopped by Immigration officers; that he didn't know the passengers in his car; that no arrangements had been made with him to pick them up; that he didn't carry on any conversation with his passengers, and that he was unaware that the passengers were without proper papers until he was stopped by the Immigration Officers, and his passengers were rounded up by such officers.

On cross-examination he stated that he did not recall telling the Immigration Inspector that his passengers informed him that they had no papers.

The thrust of appellant's argument on this appeal is that the action of the Government in returning the three aliens to Mexico, thereby placing said aliens beyond the subpoena power of the district court, without first giving appellant an opportunity to interview them and if the interview proved favorable to appellant's defense to subpoena them for appearance at appellant's trial while they were in the jurisdiction of the Southern District, deprived appellant of due process in preparation of his defense to the charges contained in the indictment.

The Fifth Amendment to the Constitution of the United States in relevant part provides that no person shall be deprived of life, liberty, or property, without due process of law.

The Sixth Amendment provides in relevant part that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, and to have compulsory process for obtaining witnesses in his favor.

No case is cited in the briefs of counsel, nor have we been able to find one, which passes upon the legal issue presented under the unusual circumstances disclosed by the record in this case.

We learn from Washington v. Texas, 388 U.S. 14, at pages 18–19, 87 S.Ct. 1920, at page 1923, 18 L.Ed.2d 1019 (1967):

"The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States. This Court had occasion in In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), to describe what it regarded as the most basic ingredients of due process of law. It observed that:

'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court —are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' 333 U.S., at 273, 68 S.Ct. at 507 (footnote omitted).

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the

truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

Appellant does not contend that the Government, without more, is under an obligation to search out and produce witnesses who may be favorable to the defense. He does contend, however, that it is a denial of due process when such witnesses have been made unavailable by the conduct of the Government.

In Ferrari v. United States, 244 F.2d 132 (9th Cir. 1957), cert. den. *sub nom.* Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 124, 2 L.Ed.2d 78, the court stated at page 141:

"The appellee was under no obligation to look for the appellant's witnesses, in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence of the appellee."

In Gregory v. United States, 125 U.S. App.D.C. 140, 369 F.2d 185 (1966), it is stated at page 188:

"Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which, not only the statute, but elemental fairness and due process required that he have."

And on the same page:

"A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined. The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case." [Footnotes omitted.]

In its brief the Government states:

"Appellant made no showing the government made these witnesses unavailable or precluded their appearance at trial. The witnesses had been returned to their country, but were available to the appellant if he desired to call them in preparation of his defense."

In view of the fact that the Government returned these witnesses to Mexico, thus placing them beyond the reach of the subpoena power of the Southern District, such argument is unworthy of the Government.

Appellant concedes that he is unable to show that the witnesses in question would have offered testimony favorable to the defense. Such statement is understandable in view of the fact that appellant was, by Government action, deprived of the opportunity to interview said witnesses. Appellant couldn't know what these witnesses might say, if anything. We are in the same position as the appellant. We decline to indulge in any speculation that the interviews would, or would not, have been fruitful to the defense.

The judgment of conviction is reversed, and the cause remanded to the district court for such further proceedings as the court may deem meet and proper.

KILKENNY, Circuit Judge (dissenting):

I respectfully dissent. There is absolutely nothing in this record to suggest that the deported aliens were made unavailable as witnesses by reason of the misconduct or, for that matter, the negligence of the government. By statute,[1] the Attorney General is expressly authorized to order deportation of aliens illegally entering the United States. To require the government, in the circumstances of this case, to retain deportable

I. 8 U.S.C. § 1251(a) (2).

aliens until the defendant in a criminal proceeding had an opportunity to interview them, is to place upon the government an unconscionable and indeed unmanageable burden. This is not a case where the government concealed alien witnesses, nor is it a case where the government deported the aliens with knowledge that they would be helpful to appellant's defense. The record is completely devoid of anything which would suggest that the testimony of any one, or more, of the deported persons would have been helpful to appellant. There is no evidence whatsoever that the deportation deprived the appellant of "access to a storehouse of relevant fact." Dennis v. United States, 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966). There must be some showing of negligence or misconduct on the part of the government before the court can say that the defendant, in this type of a proceeding, is denied due process. Ferrari v. United States, 244 F.2d 132 (9th Cir. 1957), cert. denied *sub nom.* Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 124, 2 L.Ed.2d 78 (1957). Here, in my opinion, the appellant has not made such a showing.

I would affirm the judgment.