**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert VERDUZCO–MACIAS, Defendant-
Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edwin Lloyd CORTELYOU, Defendant-
Appellant.**

**Nos. 71–2937, 72–1153.**

United States Court of Appeals,
Ninth Circuit.

June 15, 1972.

Certiorari Denied Oct. 10, 1972.
See 93 S.Ct. 173.

Matthew Lees (argued), Philip A. De Massa, San Diego, Cal., S. Randolph Seymour, Van Nuys, Cal., of Federal Defenders, Inc., David Berman, San Diego, Cal., for defendants-appellants.

Donald F. Shanahan, Asst. U. S. Atty. (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before KOELSCH and TRASK, Circuit Judges, and BYRNE,* District Judge.

TRASK, Circuit Judge:

These appeals are from appellants' respective criminal convictions for violating the Immigration & Nationality Act of 1952, 8 U.S.C. § 1101 et seq. Appellant Verduzco was adjudged guilty on all counts of a five count indictment, charging him with four counts of transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a) (2), and one count of conspiracy to violate that subsection in contravention of 18 U.S.C. § 371. Appellant Cortelyou was convicted on all counts of a nine count indictment, charging eight counts of transporting illegal aliens and one count of conspiracy to violate 8 U.S.C. § 1324.

The cases were consolidated for purposes of appeal because they present a common question regarding the effect on appellants' convictions of farming out illegal aliens apprehended in this country, who might have been material witnesses to crimes against the immigration laws, and who subsequently left the farms, becoming unavailable for defense questioning and use at trial.

Cortelyou was arrested when border patrol agents found eight illegal aliens in the camper compartment of the pickup truck he was driving. All eight aliens were placed on farms; three left before trial. Cortelyou's counsel had not been able to interview the unavailable aliens, and no statements from them were included in the stipulated facts upon which Cortelyou's case was decided. Statements from the five available aliens were so used.

Four aliens were in the car driven by Verduzco's alleged co-conspirators when they were apprehended. One of these aliens was placed in Juvenile Hall and was available to and did testify at Verduzco's trial. The other three aliens were placed on farms where they did not remain. Verduzco's counsel did not have an opportunity to interview the unavailable aliens, and no statements from them were used at Verduzco's trial.

Appellants argue that their cases are governed by United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971). There, six aliens were found in defendant's car at the time of his arrest. Three were placed on farms and were present to testify against defendant at his trial; three were returned to Mexico by the government. This court held that the government's action in returning these witnesses to Mexico, and thereby placing them beyond the reach of the subpoena power of the trial court, was in violation of defendant's right to due process. His conviction was reversed.

*Mendez-Rodriguez* is different from the cases before us. After the aliens involved in *Mendez-Rodriguez* and in these cases were discovered unlawfully within the United States by the border patrol agents, the government had three alternatives: (1) charge the aliens with violation of 8 U.S.C. § 1325; (2) deport them immediately under 8 U.S.C. § 1251; or (3) allow them to remain in this country until the trials, and then deport them. With respect to the aliens involved in *Mendez-Rodriguez*, the second course was chosen; with respect to the aliens involved in the cases before us, the third course was chosen. The government did not itself take action which would remove the witnesses from the subpoena power of the court. In fact, the government took positive steps in order that the aliens would be available to testify at appellants' trials; they were farmed out and half their pay withheld pending their appearances at the trials.

Three of the eight aliens so placed in Cortelyou's case left the farms; all three of the aliens so placed in Verduzco's case departed. But the government

did not physically move them from the jurisdiction of the court and did not actively facilitate their leaving. Appellees argue that this distinction between these cases and *Mendez-Rodriguez* is crucial and determinative. *Cf.* United States v. Peyton, 454 F.2d 213, 214 (9th Cir. 1972). We agree.

Under 18 U.S.C. § 3149,

"[i]f it appears by affidavit that the testimony of a person is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpena, a judicial officer shall impose conditions of release pursuant to section 3146." [1]

The material witness is treated like a person accused of a noncapital crime. 18 U.S.C. § 3146 provides that personal recognizance or release on an unsecured bond shall be the presumptive determination in all cases. Other conditions cannot be imposed unless the bail-setting judicial officer determines that such release "will not reasonably assure the [person's] appearance . . . ." If he does make that determination, he must then consider each of the prescribed conditions in the order of priority listed in the statute; he may impose a combination of such conditions if one is insufficient.

Some of the conditions listed in Section 3146 are: (1) release in the custody of some responsible person or organization; (2) restrictions on travel, associations or place of abode; (3) a returnable cash deposit, not to exceed 10 percent of the bond set; and (4) "any other condition deemed reasonably necessary to assure appearance . . .," such as part-time custody.

18 U.S.C. § 3149 also provides that a material witness who is unable to comply with the conditions of release under Section 3146 shall not be detained "if the testimony of such witness can adequately be secured by deposition, and further detention is not necessary to prevent a failure of justice."

These provisions clearly favor release of the material witness over his detention, Bail Reform Act of 1966, § 2, 1966 U.S.Code Cong. & Adm.News 241, in cases where Section 3149 is invoked. However, in the cases before us, it appears that the unavailable aliens had departed the farms before either appellants' counsel had an opportunity to invoke 18 U.S.C. § 3149 or Fed.R.Crim.P. 46(b).

In the absence of the instigation of that procedure, we are cited to no statutory requirement that the court, sua sponte, or the Immigration & Naturalization Service take steps to place the aliens in protective custody. The means used in these cases, the farming out of the aliens, induced them to make themselves available until trial or until defense counsel could take whatever steps he would under Section 3149 or Fed.R. Crim.P. 46(b); the aliens were able to perform the farm labor they were seeking, and half their wages was withheld pending their appearances at the trials.[2] The records in these cases do not disclose the particular procedures followed, and no counsel was able to furnish any enlightenment to this court. It is clear, however, that the trial court was correct in determining that these cases are not controlled by *Mendez-Rodriguez*.

Verduzco's case was tried before a jury. The prosecution's witnesses testified that in July 1971, Eddie Hendrickson was told by Sergio that he could earn money picking up Mexicans and bringing them from San Diego to Los Angeles. On July 30, 1971, Sergio told Hendrickson to be at a certain service station near San Ysidro that night at approximately 9:00 p.m. Hendrickson and Thomas Stanley flew to San Diego,

---

1. The power to arrest and detain material witnesses is inferable from Section 3149. Bacon v. United States, 449 F.2d 933, 937–38 (9th Cir. 1971). Fed.R.Crim.P. 46(b) is to the same effect. *Id.*

2. The retention of one-half of wages earned exerts the same type of economic inducement as a returnable cash deposit not to exceed ten percent of the bond set. 18 U.S.C. § 3146(a)(3).

rented a car and drove to the appointed gas station; nothing happened, so they drove back to Los Angeles. The next day, Sergio urged Hendrickson to return to that station that day and promised someone would be there. Hendrickson and Stanley again drove to the gas station where they were approached by a man each identified as Verduzco, and who so identified himself to them. Verduzco told them to return at 9:00 p.m., and they did so. At that time, Verduzco said he had "four" to be transported to Los Angeles, and that one was to go to Verduzco's home address. Stanley was instructed to back up to a telephone booth, and four persons got into the vehicle. Verduzco then returned to his black Ford automobile and drove out of the station. Hendrickson and Stanley likewise left the station, but they were quickly stopped by a border patrol agent who had witnessed the activity at the gas station. The agent found four illegal aliens in the vehicle; they did not have any papers allowing them to be in the United States. Jesus Pena-Miranda, the only alien found in the car and available to testify at the trial, said that he had entered the United States illegally at Tijuana with three other people and a guide, and that he had paid to be taken to Los Angeles. He never saw Verduzco.

Verduzco testified that on Saturday, July 31, he had been drinking beer at his uncle's home in Los Angeles. This alibi was corroborated by his wife and uncle. He admitted that his address was the same as that to which Hendrickson and Stanley had been told to bring one of the aliens, but he stated that he had given his address to two friends in Tijuana two months before. He also admitted owning a black Ford.

The jury returned verdicts of guilty against Verduzco on all five counts of the indictment, and he was sentenced to imprisonment for two years on each count, the sentences to run concurrently. This judgment was amply supported by the evidence and it is affirmed.

Cortelyou's case was submitted to the district judge, sitting without a jury, on stipulated facts. At about 1:10 a.m. on July 29, 1971, Cortelyou was stopped by border patrol agents while driving a pickup truck with a camper body northbound on Interstate 5 near San Clemente, California. Defendant owned the truck and had rented the camper shell. The agents found eight illegal aliens inside the camper. After being advised of his rights, Cortelyou told the agents he had picked up the aliens a few miles south of the place of apprehension, where they were hitchhiking. He did not know they were illegally in the United States.

If called as witnesses, the available aliens would have testified that they were illegally within the United States. They were led across the border by a man who pointed out a parked pickup truck which they entered without seeing the driver. The camper proceeded to a private residence in Oceanside, California, and the aliens remained in the truck all day. One of the aliens saw the driver in Oceanside and identified Cortelyou as that man. Three other aliens saw the back of the driver's head during their ride and said it looked like Cortelyou. The available aliens also would have testified that they were not hitchhiking and were picked up pursuant to arrangements to get them into the United States illegally.

If defendant had testified, he would have stated that he was in San Diego to go fishing with a friend he was unable to locate. When he gave up the search, he started drinking. After he became drunk, he was approached by a stranger who asked him if he could borrow his truck for a few minutes and then requested Cortelyou to drive it to a designated intersection in Los Angeles where the stranger would meet him. Cortelyou did not know what the stranger's purpose was, but agreed to the plan. He would have admitted to acting imprudently. He did not know the aliens were in his camper, and first saw them after

the agents stopped him. He would have admitted fabricating the story he told the agents at his apprehension.

The judge found Cortelyou guilty on all nine counts of the indictment, placed him on five year's probation on each count, to run concurrently, and fined him $500 on the conspiracy count.

The court was clearly entitled to determine in favor of the government and against the appellant upon the stipulation. The judgment as to Cortelyou is likewise affirmed.