UNITED STATES of America,
Plaintiff-Appellee,

v.

Juan CARRILLO–FRAUSTO,
Defendant-Appellant.

No. 73–1696.

United States Court of Appeals,
Ninth Circuit.

May 9, 1974.

As Amended on Denial of Rehearing
July 5, 1974.

Classen Gramm, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CARTER, GOODWIN and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Carrillo was convicted on three counts of harboring and concealing aliens. He asserts that the trial judge should have

granted his motion for dismissal when it appeared that two of the aliens who allegedly were harbored and concealed had been released by the magistrate without his consent and without his having an opportunity to interview the witnesses or to perpetuate their testimony. We affirm.

Carrillo and co-defendant Domingo Islas-Garcia were arrested in San Diego County, California, on January 11, 1973, and brought before a magistrate on the following day. Before defense counsel entered the case, the government filed material witness complaints for the nine aliens in the company of Carrillo and his co-defendant at the time of their arrest. Two of these aliens were juveniles, aged 13 and 16. Over the objections of the government, the magistrate refused to remand the juveniles to custody because of the apparent unavailability of adequate detention facilities for minors. The government suggested no alternatives to jail. Upon their release, the juveniles returned to Mexico. Defense counsel had no opportunity to interview them.

On January 17, 1973, Carrillo and the co-defendant were indicted for conspiracy to smuggle aliens into the United States and for nine counts of concealing, harboring and shielding aliens. A motion for dismissal of all counts based on the unavailability of two material witnesses was made at the beginning of trial on February 8, 1973, and denied. The motion was renewed upon the conclusion of the government's case and again at the close of defendants' case. In each instance, it was denied. Co-defendant Islas was acquitted on all counts, while Carrillo was acquitted on the conspiracy count but convicted on three substantive counts.

Carrillo asserts his conviction for harboring and concealing aliens should be reversed because he was denied the opportunity of questioning two minors who were temporarily detained with seven other aliens as material witnesses. He bases his contention upon United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971), where we held that it was a denial of due process for the government to interview all of the material witnesses and then return to Mexico those it determined were not essential to its case. The present case is clearly distinguishable. *Mendez-Rodriguez* involved the unilateral decision of the *prosecution*, in effect, to suppress evidence. In the instant case the *court*, in its discretionary power to release alien witnesses and out of concern for the welfare of two juvenile aliens, aged 13 and 16, refused to subject them to our criminal process.

■ We have concluded that both sides should have equal access to alien material witnesses in cases such as this, but that premise should not dictate that the court must sacrifice human values and other relevant considerations to follow blindly such an enshrined principle. While *Mendez-Rodriguez* prevents the government from gleaning whatever information it can from witnesses and then releasing them to go beyond the jurisdiction of the court, neither that case nor logic nor justice should prevent the court from independently determining that relevant concerns dictate that a witness should not be detained. The court has the power to release witnesses when the facts dictate that retention would be inappropriate or undesirable.

■ No bad faith can be charged to the government. It did not release the aliens. On the contrary, it moved to detain the aliens at least until defense counsel could interview them. The record does not demonstrate whether any facilities other than jail were feasible. If there were and if the magistrate concluded they should be used, he had the power to order the government to provide such facilities. However, the witnesses were not entitled to any especially favored treatment by the government. They were lawbreakers; they were illegally in this country and subject to prosecution. 8 U.S.C. § 1325. The government moved to retain them and it objected when the magistrate decided to release them. The government acted reasonably under the circumstances.

The magistrate has the discretionary power to release alien witnesses. Reversal here can be based only upon the theory that the magistrate abused his discretion. Carrillo has failed to demonstrate that that discretion was abused.

Affirmed.

ALFRED T. GOODWIN, Circuit Judge (dissenting):

I have had some misgivings about the categorical holding in United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971), that prejudice need not be shown in order to reverse a conviction once it appears that the government has permitted material witnesses to leave the jurisdiction. However, *Mendez-Rodriguez* is the law of the circuit and, in my view, requires us to reverse the conviction here.

The substantive distinction drawn by the majority between a case in which the prosecution causes the release of the witnesses (*Mendez-Rodriguez*) and a case in which the magistrate causes the release (*Carrillo-Frausto*) makes sense only if administration were our sole concern. However, a defendant on trial without a needed witness is not as concerned about which branch of the government deprived him of the testimony of that witness as he is about the absence of the witness.

Moreover, by failing to propose to the magistrate alternative plans for paroling the witnesses into the United States and housing them at least until Carrillo-Frausto and his attorney could interview them,[1] the government denied Carrillo-Frausto his due-process right to offer testimony and to compel the attendance of material witnesses as effectively as if the prosecution itself had released the witnesses. It is clear from the transcript that were it not for the prosecution's failure to furnish or at least suggest proper facilities the magistrate would have remanded the juvenile witnesses to custody. We can take judicial notice of the power of the prosecution to keep witnesses on hand without jailing them when the prosecution deems such detention necessary. Failure to offer some alternative to custody where the only form of custody available was a jail-like institution left the magistrate little choice but to order the release of the witnesses.

Since *Mendez-Rodriguez*, decided eighteen months prior to the magistrate's hearing in this case, the government has been aware of its duty not to make material witnesses unavailable to the defense. A prosecutor acting with due diligence would not, at this late date, still have been unable to suggest alternatives other than release or incarceration in a prison when faced with the problem of how to insure the availability of two juvenile witnesses. Whether we attribute the government's inaction to bad faith or merely negligence (*see* United States v. Romero, 469 F.2d 1078, 1079 (9th Cir. 1972), cert. denied, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); Ferrari v. United States, 244 F.2d 132, 141 (9th Cir.), cert. denied sub nom., Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957)), the denial of due process is the same. In this case there is no evidence of bad faith. From the standpoint of preparing an effective defense, however, it matters little whether the witnesses were made available by prosecutorial action or inaction.

I would reverse the conviction.

---

1. The government need not, in every case, retain alien material witnesses until trial. It must, however, retain them at least until the defendant has had an opportunity to interview them. United States v. Mendez-Rodriguez, 450 F.2d at 4. *See* United States v. Lomeli-Garnica, 495 F.2d 313 (9th Cir. 1974).