**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sean H. McQUILLAN,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter W. HAMILTON,
Defendant-Appellant.**

**Nos. 74–2461, 74–2691.**

United States Court of Appeals,
Ninth Circuit.

Dec. 12, 1974.

of possessing a controlled substance (176 lbs. of marijuana) with intent to distribute the same, as charged in Count Four of the Indictment.

On December 23, 1973, Customs Patrol Officers Davis and McDermott were on routine patrol duty on the Border Park Beach approximately one half mile north of the international border [R.T. 12]. Around 2:00 a. m., McDermott observed four silhouettes (Hamilton, McQuillan, Sakel—a fugitive codefendant—along with another unidentified person) approximately halfway between him and the border. They appeared to be carrying backpacks on their backs and were proceeding north along the beach [R.T. 13]. McDermott then observed one silhouette (Defendant Hamilton) separate from the rest and head north of McDermott's position and then return to the rest. This person appeared to be wearing a white type sneaker [R.T. 14]. Officers Davis and McDermott then radioed for assistance, and additional Customs Patrol officers, along with a Border Patrol agent, went to the area, cordoning it off [R.T. 14]. As the dragnet was tightened, seven people (the three defendants and four Mexican aliens) were flushed from various hiding places and apprehended before they could cross the line into Mexico [R.T. 15]. It appeared to McDermott that there were two distinct groups of people, but when the suspects turned to run back toward Mexico they appeared to group together [R.T. 15]. Defendant Hamilton was found lying in the water. All three defendants had sand all over them. The four Mexican aliens, on the other hand, were fairly well-dressed and their clothes were not as soiled as the defendants [R.T. 16].

After the apprehension of the seven subjects, Border Patrol Agent Grasky—an expert tracker—backtracked the footprints of defendants Hamilton, McQuillan, and Sakel and discovered four backpacks containing 80 kilograms of marijuana abandoned on the beach (C.T. 42).

---

James P. Hagerstrom, of Hagerstrom & Geller, San Diego, Cal. (for appellant McQuillan); Anthony Deutsch, of Deutsch, Parziale & McCabe, San Diego, Cal., (for Hamilton), for defendants-appellants.

Henry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BARNES and TRASK, Circuit Judges, and BALDWIN,* Judge, Court of Customs and Patent Appeals.

## OPINION

BARNES, Circuit Judge:

Defendants appeal their conviction under 21 U.S.C. § 841(a)(1) for the offense

* Honorable Phillip B. Baldwin, Court of Customs and Patent Appeals, sitting by designation.

Grasky compared the footprints of the backpackers with those of the defendants and determined that three of the backpackers were in fact Hamilton, McQuillan, and Sakel. He further compared the footprints of the backpackers with those of the Mexican aliens and determined that they did not make any of the tracks found around the area of the backpacks which contained the marijuana (C.T. 42).

After the arrests, DEA Agent Paul Provencio interviewed the four Mexican aliens found in the area along with the defendants and, on the basis of his interview together with his personal observations of the defendants, decided not to charge them in connection with the smuggling of the seized marijuana [R.T. 42–43]. Specifically, Provencio noted that the clothing of the aliens was inconsistent with the smuggling of the marijuana [R.T. 43]. They were neatly dressed; their shoes were not scuffed; their clothes were not dirty as it would have been had they been crawling; and the clothing on their backs did not have perspiration marks on them that would have been left had they in fact been carrying backpacks [R.T. 43, 45]. In addition, the aliens told Provencio that they had just walked into the United States when one of the defendants had crawled over to them and stated that border policemen were in the area and that if they followed him, they would not be apprehended [R.T. 44]. Agent Provencio then turned the aliens over to the Border Patrol for processing as illegal aliens [R.T. 43, 51]. Having concluded that the four aliens had no connection with, or knowledge of, the seized marijuana, the four aliens were, as is customary, returned to Mexico by the government.

At the hearing on the motions in the case, the government provided defense counsel with all the information it possessed with respect to the names and addresses of the four Mexican aliens arrested on the beach [R.T. 44].

On May 29, 1974, the date of trial, the court admitted into evidence letters from appellants addressed to the four witnesses. The letters had been returned undelivered by the Mexican postal system. Also admitted into evidence were copies of letters sent to the police departments in each of the Mexican cities and to the American Consul asking for their assistance in locating these individuals [R.T. 72–73].

The gravamen of this appeal and the sole issue raised, is that appellant feels that "the government's action in returning to Mexico four witnesses [sic] to the alleged offense of possession of a controlled substance with intent to distribute, before defendants had an opportunity to interview the alien witnesses [sic], denied defendants' [Fifth Amendment] right to Due Process and [Sixth Amendment] right to compulsory process." (Appellant's Brief at 5). In support of their proposition, appellant cites our decision in United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971).

We disagree with appellant that this is a case controlled by *Mendez-Rodriguez.*

1. In *Mendez-Rodriguez* the court condemned the then policy of the United States in alien smuggling cases of keeping select alien eyewitnesses while returning others to Mexico without affording the defense an opportunity to interview them and ascertain whether any would be able to give testimony favorable to the defendant.

2. In *Mendez-Rodriguez* there was no question but that the aliens returned to Mexico were in fact eyewitnesses to, and active participants in, the crime with which defendant was charged. The border patrol had stopped Mendez as he was driving a car with six illegal alien passengers, three of whom were the returned witnesses. Mendez was subsequently charged with conspiring to smuggle and transport the three aliens in the group who were kept as government witnesses.

3. In *Mendez-Rodriguez,* the defendant had an alibi which might have been corroborated by the missing witnesses. Mendez testified that one of the passengers in his car had been hitchhiking

along the highway and that he, Mendez, had stopped to give him a ride. When he did so, according to the defendant, the hitchhiker was joined by the other five and he consented to give them all a lift. The three aliens who did testify against defendant simply stated that they had been waiting beside the highway when Mendez stopped and they entered the car. There was thus a possibility that one of the missing aliens might have materially aided in Mendez's defense. As a practical matter, however, the government effectively precluded the defendant from even exploring this possibility, and this court found that to be a violation of due process.

4. In *Mendez-Rodriguez*, the appellant was unable to show that the testimony of the missing witnesses would have been helpful. This court found this failure excusable in light of the fact that the government deprived defendants of the opportunity to even interview them. However, in *Mendez-Rodriguez*, there was at least a strong probability that the missing witnesses could have provided material and relevant information concerning the events constituting the crime.

In the instant case, it is not alleged by defendants that there was any mistaken identity between aliens and defendants as to who was smuggling the marijuana, or that the aliens were in any way participants in the crime. There is no connection whatsoever between the aliens and the crime defendants were committing except that the aliens happened to be attempting to illegally immigrate into this country at the same time and place defendants were illegally smuggling in marijuana.

In sum, *Mendez-Rodriguez* is inapplicable to the instant case because there is nothing to indicate that the aliens here were witnesses to the crime of which appellants were convicted, and nothing to indicate the barest possibility that their testimony could have been of any benefit to the accused.

Inasmuch as the only issue raised on this appeal is the action of the government in returning four alleged alien "witnesses" to Mexico; and it being clear they were not witnesses to the crime charged, of which defendants were convicted, we affirm the conviction.

Affirmed.