**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jorge CASTELLANOS–MACHORRO,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rosa CASTELLANOS–COTA,
Defendant-Appellant.**

Nos. 74–2858, 74–2859.

United States Court of Appeals,
Ninth Circuit.

March 17, 1975.

**1182**

D. Ivan Dirkes (argued in 74–2858), Clarence W. Finley (argued in 74–2859), San Diego, Cal., for defendants-appellants.

William A. Shaw, Asst. U. S. Atty. (argued), for plaintiff-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and ZIRPOLI,* District Judge.

## OPINION

ZIRPOLI, District Judge.

Jorge Castellanos-Machorro (Jorge) and his wife, Rosa Castellanos-Cota (Rosa), appeal from their convictions for transporting, concealing, and conspiracy to transport and conceal aliens illegally within the United States. Their sole contention on appeal is that they were denied due process of law because the Government released certain aliens and returned them to Mexico before appellants were able to interview these aliens. They rely upon this court's decision in United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir. 1971). We affirm.

Appellants were the managers of the Flamingo Motel in San Ysidro, California, near the Mexican border. They

* Honorable Alfonso J. Zirpoli, United States District Judge for the Northern District of California, sitting by designation.

were indicted, along with four others, in an eleven-count indictment. The first count charged that they conspired to violate 8 U.S.C. section 1324 by encouraging and facilitating the entry into the United States of aliens not lawfully entitled to enter. The remaining ten counts related to the concealment and transportation of five named aliens. As to each of these five aliens, the indictment charged appellants with one count of violation of 8 U.S.C. section 1324(a)(2) and another of violation of 8 U.S.C. section 1324(a)(3). Citing the release of 88 aliens apprehended while allegedly travelling north from the Flamingo Motel and the release of approximately 200 other aliens discovered in the vicinity of the motel,[1] appellants moved to dismiss on the basis of *Mendez-Rodriguez, supra.* The trial court denied the motion after a hearing.

Appellants then agreed to submit the case to the court based on stipulated facts reciting what the testimony of the Government's witnesses would be at trial. The Government's case was strong. In addition to the testimony of the Border Patrol Agent and the five aliens whose transportation formed the basis of the second through eleventh count, the prosecution had testimony from four former drivers for the smuggling operation. The drivers testified that they had each picked up aliens at the motel on orders from one of appellants' codefendants, giving an envelope containing money to one or the other of the appellants and receiving in return an envelope containing addresses of relatives and friends of the aliens to whom they should be delivered in the Los Angeles area. There was no testimony to connect Rosa with the transactions out of which the second through eleventh counts grew, but three of the drivers stated that they had dealt personally with Rosa on occasions when Jorge was not present. See C.T. 62, 65, 66; cf. C.T. 68. The trial court found Jorge guilty on all eleven counts and

1. The court is unable to determine with any accuracy what the circumstances of apprehension or release of these 200 aliens were; their release does not seem to be involved in this appeal.

found Rosa guilty on the first count. It sentenced Jorge to five years' imprisonment concurrently on all counts and Rosa to serve one year.

Appellants contend that their ability to defend against the charges made was unconstitutionally foreclosed by the Government when it released the 88 aliens it had apprehended travelling north from the Flamingo Motel. We conclude that the controlling principles for this case were those enunciated in United States v. McQuillan, 507 F.2d 30 (9th Cir., 1974). Appellants there had been convicted of possession of marijuana with intent to distribute it. They were apprehended, along with four Mexican aliens, attempting to cross the border on foot, and backpacks containing marijuana were found nearby. An agent of the Drug Enforcement Administration interviewed the four aliens and decided not to charge them with smuggling the marijuana, mainly because they did not appear to him to be soiled and sweaty—as they would have been had they been carrying the backpacks—while appellants did. The aliens were returned to Mexico. The court affirmed, distinguishing *Mendez-Rodriguez* on several grounds: (1) in that case there was no question but that the aliens returned to Mexico were in fact eyewitnesses to, and active participants in, the crime with which defendant was charged; (2) in that case appellant had an alibi which might have been corroborated by the missing witness; (3) there was at least a "strong probability" that the missing witness could have provided material and relevant information concerning the events constituting the crime. It concluded that

*Mendez-Rodriguez* is inapplicable to the instant case because there is nothing to indicate that the aliens here were witnesses to the crime of which appellants were convicted, and nothing to indicate the barest possibility that their testimony could have been of any benefit to the accused.

 Applying that standard to this case, it is clear that Jorge has no basis for challenging his convictions on counts two through eleven of the indictment. The five aliens to whom these counts related were all available to him. He makes no claim that any of the 88 aliens who were released had any connection with the transactions that formed the basis for counts two through eleven; their testimony could not conceivably exculpate him. While under the concurrent sentence doctrine, we need not reach his challenge to his conviction on the conspiracy count, see United States v. Moore, 452 F.2d 576 (9th Cir. 1971), we reject his argument on that count for the same reasons we reject Rosa's argument.

 Rosa was convicted only of conspiracy, and she argues that these 88 aliens could have offered testimony that would have helped her defend against that charge. Yet she can offer no persuasive basis for concluding that their testimony would even be admissible. Her argument that it would be admissible seems to devolve into two basic contentions.[2] First, she claims that these aliens could testify that she did not smuggle *them*. Assuming that to be true, the court cannot see how such testimony would be admissible since it would not in any way impeach the testimony of the drivers who said that they

---

2. In her memorandum in support of her motion to dismiss at trial, Rosa did not stress the arguments discussed in the text, but contended that she was being deprived

of any opportunity whatsoever to attempt to establish whether or not those 300 or more persons deported by the government may have in fact been entitled to be in the United States, whether or not their last entry into the United States had been within the preceding three years . . .

C.T. 49. Such testimony would not, of course, be admissible at trial, since the persons transported by the four drivers successfully reached Los Angeles and were not, to our knowledge, apprehended by the Government. It is additionally worth noting that her argument to the trial court presupposes that these aliens were wrongfully deported, since it relies on the prospect that they had a right to enter the country.

dealt personally with her in the smuggling operations. Indeed, there is no reason to believe that the aliens smuggled by these drivers were in any way privy to the arrangements between them and the drivers. Rosa's second contention depends upon speculation that these witnesses might open up whole new vistas of defense strategy. She speculates, for example, that some of them might testify that they were actually smuggled by some other person at the Flamingo Motel—a permanent resident of the motel, perhaps. She does not suggest that such a person exists, nor does she explain how such testimony would be admissible in light of the Government's reliance on the testimony of the drivers who claim to have dealt personally with her. Even if someone else were engaged in smuggling aliens through the motel, it would not be relevant to her case. In short, Rosa cannot propose any basis for believing that the 88 aliens could conceivably have aided her in defending against the conspiracy charge. It was therefore no violation of her rights for the Government to release them before she had an opportunity to interview them.

The judgments are affirmed.