582 P.2d 649

**The STATE of Arizona, Appellee,**

v.

**Samuel Surez ISLAS, Appellant.**

**No. 2 CA–CR 1287.**

Court of Appeals of Arizona, Division 2.

May 25, 1978.

Rehearing Denied June 29, 1978.

Review Denied July 18, 1978.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

William L. Scholl, Tucson, for appellant.

## OPINION

RICHMOND, Chief Judge.

After a trial to a jury, appellant was convicted of conspiracy, first degree; the imposition of sentence was suspended and he was placed on probation for five years.

He raises two issues on appeal:

1. Whether the deportation of one of the co-defendants constituted a due process violation requiring the court to grant appellant's motion for dismissal.

2. Whether the prosecutor's statements in opening and final argument were improper and justify a reversal.

Neither issue merits a reversal.

Appellant and six co-defendants were arrested on January 11, 1977, during the sale of approximately 300 pounds of marijuana to two undercover sheriff's deputies assigned to the Metropolitan Area Narcotics Squad. The arrangements to purchase the marijuana had evolved from the agents' first contact with one of the middlemen on January 3, 1977, through a series of meetings and phone calls involving different groupings of the co-defendants.

At the preliminary hearing, agent Petropoulos at first mistakenly identified one of appellant's co-defendants, Fernando Ortiz Ramirez, as appellant. At trial there was a conflict in the evidence as to whether it was appellant or another co-defendant who was at a meeting with the agents on January 7, 1977. On the day of the arrest, appellant was present at the scheduled exchange but there was conflicting evidence as to whether or not he was a co-conspirator. Appellant's co-defendants, Carrillo, Morgan, Pallanes and Bracamonte, were witnesses for him at trial.

■ Appellant claims that Ramirez also was a material witness and that the state intentionally or negligently caused him to be unavailable. He relies on what is called the *Mendez-Rodriguez* rule in the Ninth Circuit. *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971).

In *Mendez-Rodriguez* the defendant was arrested while transporting six illegal aliens in his car. Three of the six were deported by the government to Mexico before the defendant or his counsel could interview them and the other three were retained as material witnesses for the trial. The defendant's motion to dismiss was denied and he was convicted, but on appeal his conviction was reversed and the court held that his Fifth and Sixth amendment rights had been violated by the government's act of deporting the three witnesses. *See also United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974); *United States v. Alonzo-Miranda*, 427 F.Supp. 924 (E.D.Cal.1977).

*Mendez-Rodriguez* is inapplicable to the facts before us. At the preliminary hearing, the charges against Ramirez were dismissed. Defense counsel commented that if Ramirez were released he would be remanded to the custody of the United States Immigration Service, which had a "hold" on him. Neither defense counsel nor the prosecutor expressed concern about keeping him in Tucson as a witness. He had been avail-

able for interview from the time of his arrest, and no effort was made to serve him with a subpoena or forestall his deportation.

 Appellant's second contention concerns remarks made by the prosecutor in her opening statement and final argument. In the opening statement, she said:

"By way of explanation I'd like to state that this is my very first trial and I hope you will bear with me if at times I—

"MR. SCHOLL: I object to this, not the purpose of the opening statement.

"THE COURT: Overruled."

The extent to which counsel can go in opening statement is within the discretion of the court. *State v. Prewitt*, 104 Ariz. 326, 452 P.2d 500 (1969). We find no abuse of discretion.

In final argument, while contrasting the credibility of agent Petropoulos with that of appellant's co-defendants who testified for him, she said:

"What reason would he have to tell any falsehoods about what he saw, what he observed, who said what to him. What motive does he have to lie. What motive does he have to say that it was not Mr. Islas. He has none.

"There are many, many guilty people out there, ladies and gentlemen. This police officer, to be spending his time, going after many numerous people. He's not going to be wasting his time to go after somebody if he didn't feel was the person that he identified in the first place, and *the State, ladies and gentlemen, would not waste its time bringing to trial a case in which we felt the officer was*—

"MR. SCHOLL: Objection, your Honor, that statement, ask that it be stricken.

"THE COURT: Sustained, so ordered."

The last portion of the argument was improper as an expression of personal belief. The court, however, sustained defense counsel's objection and ordered the statement stricken. It does not appear that the improper remark was sufficiently prejudicial to warrant a reversal. *See State v. King*, 110 Ariz. 36, 514 P.2d 1032 (1973)

We reach the same result as to another objectionable portion of the prosecutor's argument:

"I'm aghast at the defense for trying, objecting to the fact that agent Parella is not here, when he objected on redirect examination—

"MR. SCHOLL: I object, your Honor. This is improper as to what my objections were. She can discuss the evidence.

"THE COURT: Sustained."

We do not believe the reference to defense counsel's objections during trial, to which objection was properly sustained, was likely to have influenced the jury in reaching its verdict. *Sullivan v. State*, 47 Ariz. 224, 55 P.2d 312 (1936).

Affirmed.

HOWARD, and HATHAWAY, JJ., concurring.