**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ignacio OROZCO–RICO, Defendant-Appellant.**

**No. 78–1911.**

United States Court of Appeals, Ninth Circuit.

Nov. 13, 1978.

Rehearing and Rehearing En Banc Denied Jan. 24, 1979.

Michael L. Lipman, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Bruce R. Castetter, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Warren R. Williamson, San Diego, Cal., for defendant-appellant.

Before HUFSTEDLER and TANG, Circuit Judges, and HALL,* District Judge.

HUFSTEDLER, Circuit Judge:

This appeal presents a question of first impression: Did the Government's returning to Mexico alien witnesses, who might have impeached the Government's testimony about founded suspicion to stop the vehicle driven by the defendant, violate his due process and compulsory process rights in a prosecution for status offenses (8 U.S.C. §§ 1325, 1326)? We answer the question negatively, holding that *United States v. Mendez-Rodriguez* (9th Cir. 1971) 450 F.2d 1 does not apply in this situation.

On the evening of February 10, 1978, two border patrol agents were watching northbound traffic on Interstate 5, near the San Clemente checkpoint. The checkpoint was temporarily closed. The agents saw a northbound 1967 Ford automobile as it traveled through the area lighted by the checkpoint floodlights. The vehicle was "riding low" and the windows were fogged, indicating to the border patrol officers that "there was a temperature in that car that wasn't on the outside of the car." The agents followed the Ford and saw only one person in the vehicle, the driver. One of the agents shined his light on the driver's face to get his attention. The driver did not acknowledge the light, and he displayed nervous behavior. The officers decided that the circumstances suggested the presence of illegal aliens. The agents stopped the Ford, and when they shined flashlights inside the vehicle, they saw "bodies lying down inside." The defendant told the agents that he was born in Mexico, and he admitted that he had no immigration documents. The seven persons inside the Ford were then questioned, and each admitted that he was an illegal alien. The defendant was thereupon arrested. When the defendant was taken into custody, an identity check established that he had been convict-

---

* Honorable Peirson M. Hall, Senior United States District Judge, Central District of California, sitting by designation.

ed of illegal entry on prior occasions. All of the aliens found in the vehicle were returned to Mexico within 24 hours and defense counsel did not have any opportunity to question them.

The defendant moved to suppress the identity evidence and the record of his prior deportations which were discovered from his identification. The district court denied the motion to suppress, holding that the stop was supported by founded suspicion.

On appeal, defendant contends that the court erred in denying his motion to suppress and that the Government's action in returning the alien witnesses to Mexico deprived him of his Fifth Amendment right to due process and his Sixth Amendment right to have compulsory process for obtaining favorable witnesses, relying on *United States v. Mendez-Rodriguez, supra,* 450 F.2d 1.[1]

The defendant necessarily concedes that the returned aliens could offer no testimony whatever on the issue of guilt or innocence of the crimes for which he was indicted (8 U.S.C. § 1325, illegal entry of an alien; 8 U.S.C. § 1326, re-entry of a deported alien without the express consent of the Attorney General). He contends, however, that they might have testified that they were seated upright in the automobile, thereby impeaching testimony to the contrary by the border patrol agents. If the district court had believed such testimony, defendant reasons, it could have decided that the facts did not rise to the level of reasonable suspicion to stop the Ford. (*United States v. Mallides* (9th Cir. 1973) 473 F.2d 859.) Because the returned aliens might have offered testimony that could have been used to attack the arrest itself, defendant urges that *Mendez-Rodriguez* requires the Government to make the aliens available as witnesses.

Defendant could not have suffered any constitutional deprivation by the Government's transporting these alien witnesses beyond the reach of process unless the testimony that the witnesses might have given could conceivably have benefited him. (*See United States v. McQuillan* (9th Cir. 1974) 507 F.2d 30, 33.) The stop, even if illegal, was not the source of any evidence that could have been suppressed. Because there was nothing to suppress, any testimony by the returned aliens relevant to the legality of the stop would not have helped him.

Defendant was prosecuted for status-type offenses. His mere presence in the country, as an illegal alien and as a former deportee, was sufficient to constitute the offenses with which he was charged. He did not contend that an illegal detention requires suppression of his body. He argues, however, that the illegal stop permitted the officers to identify him, and on the basis of the identification to connect him to governmental files which included the record of his prior deportations. The law of this Circuit is that "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence. The file can be used so far as relevant." (*Hoonsilapa v. Immigration and Naturalization Service* (9th Cir. 1978) 575 F.2d 735, 738, as amended (1978) 586 F.2d 755, as further amended (1978). *See also United States v. Cella* (9th Cir. 1977) 568 F.2d 1266, 1285–87.)

Because none of the evidence which was relevant to the status offenses with which defendant was charged was tainted by the stop, even if it were illegal, testimony of alien witnesses relevant solely to claimed illegality in the stop could not possibly benefit defendant. Therefore, none of defendant's constitutional rights were violated

---

1. In *Mendez-Rodriguez,* as in *United States v. Tsutagawa* (9th Cir. 1974) 500 F.2d 420, the returned aliens might have been able to give testimony that was relevant to the offenses with which the defendants were charged. In *Mendez-Rodriguez,* the offense was transportation of illegal aliens, and in *Tsutagawa,* the offense was harboring and concealing illegal aliens. In those cases, we held that deportation of the aliens who were witnesses to the crime charged was a violation of those defendants' rights guaranteed by the Fifth and Sixth Amendments, despite the Government's good faith and the inability of the defendants to show that the witnesses would have offered testimony favorable to the defense.

when the Government returned the alien witnesses to Mexico before defense counsel had an opportunity to interview them. Anything to the contrary in *United States v. Alonzo-Miranda* (E.D.Cal.1977) 427 F.Supp. 924 is disapproved.

AFFIRMED.