**UNITED STATES of America,**
**Appellant,**

v.

**Pilar VASQUEZ–GONZALES, Appellee.**

**No. CA 80–1347.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1981.

Decided Aug. 27, 1981.

Rehearing and Rehearing En Banc
Denied Oct. 15, 1981.

John G. Hawkins, Tucson, Ariz., argued for appellant; Rhonda L. Repp, Asst. U. S. Atty., Tucson, Ariz., on brief.

Stephen C. Villareal, Tucson, Ariz., argued for appellee; Bernardo P. Velasco, Asst. Federal Public Defender, Tucson, Ariz., on brief.

Before GOODWIN and BOOCHEVER, Circuit Judges, and PALMIERI,* District Judge.

BOOCHEVER, Circuit Judge:

Vasquez-Gonzales was charged with transporting illegal aliens. The district court dismissed the indictment pursuant to *United States v. Mendez-Rodriguez,* 450 F.2d 1 (9th Cir. 1971), based on the government's deportation of certain aliens, whom the court found to be potential material witnesses. Because we have concluded that the court erred in making that finding, we reverse.

*FACTS*

On February 10, 1980, Boarder Patrol agents commenced surveillance of the Longhorn Motel in Douglas, Arizona. About 7:00 a.m. the next day they arrested eight illegal immigrants who were occupants of room 6 of the motel.

As the agents were leaving the motel area about 7:20 a.m., a taxi pulled up. The agents asked the driver if he had picked up anyone at the motel the previous day. He indicated that he had transported a group of aliens from room 6 of the Longhorn Motel in Douglas to room 41 of Motel 6 in Tucson.

The agents then took the aliens, who were in their custody, to the Border Patrol station in Douglas, arriving about 7:45 a.m. One of the agents, Esteban Roman, called another agent in Tucson, Manuel Escobedo, about 8:35 a.m., and told him about the information received from the taxi driver. Roman also related that a group of aliens from the Longhorn Motel had been arrested and that the aliens reportedly in Tucson might be part of that group.

After being questioned, all eight of the aliens arrested at Douglas were released, the first about 8:00 a.m., the last about 9:00 a.m.

Escobedo and another agent went to Motel 6 to investigate, arriving about 9:10 a.m. They continued their observation of room 41 throughout February 11, eventually following the occupants to the Tucson International Airport. There Vasquez-Gonzales and Ponce-Figueroa were arrested, along with the six illegal aliens they were apparently seeing off, about 1:00 a.m. on February 12.

On March 11, 1980, Vasquez and Ponce were indicted for transporting "on or about February 12, 1980, at or near Tucson, in the district of Arizona," the six aliens, knowing them to be illegally in this country, in violation of 8 U.S.C. § 1324(a)(2).[1]

Ponce and Vasquez filed pretrial motions to dismiss the indictment on the ground that the aliens apprehended at the Longhorn Motel in Douglas were material witnesses whose release to Mexico by the government violated the defendants' rights under the fifth and sixth amendments. After hearing oral argument on the motions, the district judge found that the group of aliens who were apprehended in room 6 of the Longhorn Motel in Douglas on the morning of February 11 were material witnesses or potential material witnesses.

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the District of Southern New York, sitting by designation.

1. Section 274(a)(2) of the Immigration and Nationality Act makes it unlawful for any person who:

> knowing that he is in the United States in violation of law, and knowing or having rea-

> sonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or more [sic], within the United States by means of transportation or otherwise in furtherance of such violation of law [any illegal alien].

8 U.S.C. § 1324(a)(2).

The court reasoned that, at the time the aliens apprehended in Douglas were released, the government had reasonable suspicion to believe that they were part of the group reported to be in Tucson, and that it would not have been an unreasonable burden for the government to hold the eight aliens for a short time, until the likelihood and imminence of an arrest were assessed. The court, therefore, granted the defendants' motions. In its April 16, 1980 order dismissing the indictment against Vasquez and Ponce, the court held that, because the Border Patrol was actively investigating who transported the aliens arrested in Douglas at the time it released them, its failure to detain the aliens as potential material witnesses for a reasonable period of time required dismissal.

On May 12, 1980 the Government filed a timely notice of appeal from the order of dismissal as to Vasquez.[2]

## I. THE MENDEZ–RODRIGUEZ AUTHORITY

In *Mendez-Rodriguez*, six people were in the car driven by the defendant, who was charged with transporting illegal aliens. After interviewing the passengers the government released three of them for return to Mexico without affording the defendant an opportunity to interview them. Mendez-Rodriguez contended that he was driving in his station wagon near Oceanside, California and had merely picked up some men wanting a ride without knowledge that they were without proper papers. The court reversed his conviction on the basis of his contention that he was denied due process when the three witnesses were made unavailable by the conduct of the government.

Subsequent cases have refined the *Mendez-Rodriguez* requirements. Those requirements were distilled in *United States v. Martinez-Morales*, 632 F.2d 112, 114–115

2. The notice omitted any reference to Ponce. On May 23, the Government moved to file a late notice of appeal as to Ponce, alleging that the notice had not been sooner filed "due to an oversight." Subsequently, Ponce was released from custody for return to his country of origin,

(9th Cir. 1980) (citations omitted) as follows:

The facts and factors underlying *Mendez-Rodriguez* were set out in *United States v. McQuillan*, 507 F.2d 30, 32–33 (9th Cir. 1974): (1) the then policy of the United States in alien smuggling cases of keeping select alien eyewitnesses while returning others to Mexico without affording the defense an opportunity to interview them and ascertain whether any would be able to give testimony favorable to the defendant; (2) the absence of any question that the aliens returned were in fact eyewitnesses to and active participants in the crime; (3) the defendant's defense theory that might have been corroborated by the missing witnesses; and (4) the strong probability that the missing witnesses could have provided material and relevant information concerning the events constituting the crime.

\*  \*  \*  \*  \*  \*

Although the majority in *Mendez-Rodriguez* expressly refused to impose a requirement that defendant show that the unavailable witnesses would have offered favorable testimony, subsequent cases have concluded that a defendant cannot "have suffered any constitutional deprivation by the government's transporting of alien witnesses beyond the reach of process unless the testimony that the witnesses might give could conceivably have benefited [the defendant]."

## APPLICATION OF STANDARD OF REVIEW

The trial court, in effect, found that the government had caused material eyewitnesses to the crime to be unavailable to the defense. We shall apply a clearly erroneous standard of review to that finding, since this circuit has repeatedly applied that standard under analogous situations.[3]

Mexico. The appeal as to Ponce has been dismissed by order of this court.

3. *See United States v. Allen*, 644 F.2d 749 (9th Cir. 1980) (probable cause for warrantless seizure of a briefcase); *United States v. Thomp-*

■ Had Vasquez been charged with transporting illegal aliens to Douglas or even from Douglas to Tucson, the aliens who were apprehended at room 6 of the Longhorn Motel in Douglas might have been material eyewitnesses. Vasquez, however, was charged with transporting illegal aliens on or about February 12, 1980 at or near Tucson, Arizona. There is no way that the aliens released at Douglas, Arizona on February 11, 1980, could have been eyewitnesses to an offense committed at another city on the following day. Under these circumstances we can reach no other conclusion but that the finding that the government had released potential material witnesses was clearly erroneous.

REVERSED and REMANDED.

son, 558 F.2d 522 (9th Cir. 1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978) (probable cause to search); *United States v. Hart*, 546 F.2d 798, 801–3 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977) (whether government used reasonable efforts to produce an informant); *United States v. Trice*, 476 F.2d 89 (9th Cir.), *cert. denied*, 414 U.S. 843, 94 S.Ct. 103, 38 L.Ed.2d 81 (1973) (finding corroboration of informant's testimony sufficient); *McKinney v. United States*, 487 F.2d 948 (9th Cir. 1973) (defendant's incompetency to stand trial).