UNITED STATES of America, Plaintiff-Appellant,

v.

Jose Luis GONZALES et al., Defendants-Appellees.

No. 78–2339.

United States Court of Appeals, Ninth Circuit.

April 4, 1980.

Rehearing Denied May 12, 1980.

Philip J. McAleer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellant.

David Elson, Joseph Shemaria, Los Angeles, Cal., Leslie Abramson, Beverly Hills, Cal., Howard W. Gillingham, Los Angeles, Cal., Edwin S. Saul, Encino, Cal., for defendants-appellees.

Before GOODWIN and SNEED, Circuit Judges, and JAMESON,[*] District Judge.

PER CURIAM.

The government appeals from a district court judgment of acquittal and the dismissal of an indictment which charged the defendants with eight counts of violating the immigration laws of the United States. We reject appellees' contention that the government's appeal is barred by the double jeopardy clause of the Fifth Amendment and remand the case for further proceedings.

## I.

### Factual Background

On March 31, 1978, nine individuals were indicted for violating the immigration laws of the United States. Count One of the Indictment charged all defendants with conspiracy to transport illegal aliens across the Mexican border into southern Arizona and thence to Los Angeles. Counts Two through Eight charged individual defendants with separate acts of harboring or transporting illegal aliens, and with aiding and abetting these offenses.

On April 4, 1978, the district court designated as material witnesses twelve illegal aliens who had been arrested with certain defendants and ordered them held on $5,000 corporate surety bonds. Three other illegal aliens had already been designated as material witnesses by a magistrate and ordered

held on similar bonds. The trial judge ordered all counsel to interview the material witnesses by April 10, 1978, and to file statements with the court concerning retention of the material witnesses for trial. Statements were filed by all parties and all material witnesses were requested held for trial.

Before trial, motions to dismiss the indictment were made on the grounds that defendants had been deprived of their constitutional rights to compulsory process and due process by the failure of the government to retain other aliens as material witnesses, particularly the government's alleged failure to retain one individual whom the government had agreed to hold. After a three day hearing, the motions were denied on the basis that there had been no governmental misconduct and the production by the government of the witness in court before trial had rendered the motions moot.

The jury was then empaneled and the trial commenced. For three days the government presented the testimony of seven witnesses. On the fourth day of trial, the government informed the court that it had learned that two other illegal aliens, who had been arrested with the defendants, had not been made available to defense counsel, and had been released by the government through agents of the Immigration and Naturalization Service. One had been allowed to return voluntarily to Mexico in lieu of deportation and the other had been released in Los Angeles.

The trial was suspended and a hearing was held. The government produced one of the "missing" witnesses at that hearing. The defendants moved to dismiss the indictment on the basis of *United States v. Mendez-Rodriquez*, 450 F.2d 1 (9th Cir. 1971) and *United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974). The court granted the motion, and suggested that defendants also

---

[*] The Honorable William J. Jameson, Senior United States District Court Judge for the District of Montana, sitting by designation.

move, which they promptly did, for a judgment of acquittal. The order was stayed for two days at the government's request. The following day the government moved to vacate the dismissal order on the ground that it could produce the other witness. On the same day the district court filed its written judgment of acquittal and dismissal.

The next day the district court heard and denied the government's motion to vacate. The government had produced both witnesses and contended that their presence rendered moot the *Mendez-Rodriquez* issue. Immediately after the denial of the motion to vacate, the government filed an emergency petition for a writ of mandamus in this court. The petition was denied, but the dismissal was stayed for four days. At the expiration of that period, the district court lifted the stay, entered the judgment of acquittal and dismissal, discharged the jury and released the defendants.

The government asserts that the acquittal was one in form only, and thus appeal is not barred by the double jeopardy clause of the Fifth Amendment. It also contends that the district court erred in granting the motions to dismiss the indictment. We address first appellee's arguments respecting double jeopardy and thereafter consider, as our holding respecting double jeopardy requires, whether the dismissal, which we treat as one with prejudice, was proper.

## II.

### *Double Jeopardy*

The Criminal Appeals Act, 18 U.S.C. § 3731, provides, in pertinent part:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or

more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."[1]

▮ Appellees contend that double jeopardy bars this appeal, arguing that jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz*, 437· U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). It is true that the double jeopardy clause is concerned with avoiding multiple prosecutions even where guilt or innocence has not been established. *United States v. Scott*, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). It also has been stated that perhaps the most fundamental rule in the history of double jeopardy jurisprudence is that a judgment of acquittal may not be appealed by the government without putting a defendant twice in jeopardy. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). This remains true even if a judgment of acquittal was entered for erroneous reasons. *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 639 (1962).

The Supreme Court, while reviewing its earlier decisions regarding double jeopardy, recently has reiterated that a "trial judge's characterization of his own action cannot control the classification of the action." *United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978), citing *United States v. Jorn*, 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553, 27 L.Ed.2d 543 (1971), citing *United States v. Sisson*, 399 U.S. 267, 290, 90 S.Ct. 2117, 2129, 26 L.Ed.2d 608 (1970). *See also United States v. Martin Linen Supply Co.*, 430 U.S. at 571, 97 S.Ct. at 1354; *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975). Justice Rehnquist, writing for the majority in *Scott*, concluded that:

---

1. In *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 567 n. 4, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977), the Supreme Court concluded that "unless barred by the Double Jeopardy Clause of the Constitution, appeals by the Government from the judgments of acquittal entered by the District Court under Rule 29(c) are authorized by § 3731."

* * * "[A] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' *Martin Linen, supra*, at 571, 97 S.Ct. [1349]. Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed.Rule Crim.Proc. 29, appeal will be barred only when 'it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.' 430 U.S., at 572 [97 S.Ct. 1349]." 437 U.S. at 97, 98 S.Ct. at 2196, 2197. (Footnote omitted.)

Federal Rule of Criminal Procedure 29 provides, in pertinent part:

"The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."

The government asserts that, not only does the record demonstrate that the district court did not consider the sufficiency of the evidence before it, it could not have considered whether the evidence was sufficient because it ruled in the middle of the government's case, thus failing to comply with Rule 29.

■ Although there is a reference in the district court's judgment to the evidence adduced by the government during the three days of trial, the record does not plainly demonstrate that the district court evaluated the government's evidence and

determined that it was legally insufficient to sustain a conviction. *United States v. Scott*, 437 U.S. at 97, 98 S.Ct. at 2197. Rather, the record before us clearly demonstrates that the order was based on constitutional grounds arising from the unavailability of potential material witnesses. *See United States v. Appawoo*, 553 F.2d 1242 (10th Cir. 1977). The acquittal therefore was in substance an order of dismissal, and as such is appealable.[2] *United States v. Scott, supra.*

### III.

### *Dismissal With Prejudice*

In *United States v. Mendez-Rodriquez*, 450 F.2d 1 (9th Cir. 1971), this court reversed convictions for conspiracy to transport and transportation of illegal aliens because the government's deportation of eyewitnesses to the alleged offenses, without first allowing the defendant to examine those witnesses violated due process. Relying on *Mendez-Rodriquez*, the district court here dismissed all counts of the indictment against all defendants because two witnesses, Avila and Rivera, were unavailable to the defense before trial.

The government challenges the trial court's action primarily on three grounds. First, if Avila was unavailable to the defense before trial, that unavailability was not due to government action. Second, because both Avila and Rivera were present at trial and could have testified, they were not "unavailable" within the holding of *Mendez-Rodriquez*. Finally, the government argues that, even if Rivera was "unavailable," the dismissal of those counts for which he was not a material witness was not warranted under *Mendez-Rodriquez*.

**2.** *Cf. United States v. Winnie Mae Mfg. Co.*, No. 78–2101 (9th Cir. June 13, 1979). Appellees made a pretrial motion to dismiss the indictment for violation of constitutional rights by the deportation of illegal aliens, many of whom may have been needed as material defense witnesses. The district court postponed the motion until a jury was sworn and a witness

questioned, and then dismissed the indictment. This court rejected the contention that the appeal was barred by the double jeopardy clause, holding that when a trial is terminated on grounds unrelated to the defendant's guilt or innocence, a government appeal does not offend against the double jeopardy clause.

Avila's unavailability did not represent a violation of due process. Under *Mendez-Rodriquez*, due process is not violated unless a material witness's unavailability is attributable to unilateral government action. *United States v. Hernandez-Gonzales*, 608 F.2d 1240, 1244 (9th Cir. 1979). Here, the government released Avila after his arrest and did not deport him or cause him to leave the jurisdiction. If defense counsel could not locate Avila before trial, that unavailability did not result from government action which placed him "beyond the reach of the defendant[s]." *United States v. Tsutagawa*, 500 F.2d 420, 423 (9th Cir. 1974).

The government's second contention, that the second alien, Rivera, was not "unavailable" because he was present at trial and could have testified is unpersuasive. Although the government relies on our holding in *United States v. Valdez*, 594 F.2d 725 (9th Cir. 1979), that reliance is misplaced. In *Valdez*, the defendants knew about the witness before trial, he was available to testify at trial, and it was "questionable whether the government had taken any action which placed the witness beyond the court's compulsory process jurisdiction." *Id.* at 728. Here, however, trial had commenced and seven witnesses had testified before the government informed the court that Rivera was a material witness for some of the alleged offenses. The government's action in allowing Rivera to return voluntarily to Mexico in lieu of deportation prevented the defendants from interviewing Rivera before trial and may have affected the defendants' response to the government's trial presentation.

Rivera was "unavailable" within the meaning of *Mendez-Rodriquez*. Accordingly, the district court's dismissal of those counts of the indictment for which Rivera might have offered material testimony was

proper. But the dismissal of those counts for which Rivera was not a material witness was erroneous.

This court, in interpreting and applying *Mendez-Rodriquez*, has consistently emphasized that unless a defendant "could conceivably" benefit from a missing witness's testimony, unless he or she is prejudiced by that person's absence, there is no denial of due process warranting dismissal or reversal. *See, e. g., United States v. Valdez, supra; United States v. Orozco-Rico*, 589 F.2d 433, 435 (9th Cir. 1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1518, 59 L.Ed.2d 783 (1979); *United States v. Lomeli-Garnica*, 495 F.2d 313 (9th Cir. 1974). Particularly relevant to this case are *United States v. Castellanos-Machorro*, 512 F.2d 1181 (9th Cir. 1975), and *United States v. Sanchez-Murillo*, 608 F.2d 1314 (9th Cir. 1979).

In this case, various defendants were indicted on eight counts. Count One charged conspiracy to transport and harbor illegal aliens. Counts Three and Four alleged that individual defendants had transported illegal aliens from Mexico to a "drop house", the Scenic Motel, near Los Angeles, or had aided and abetted that transportation. Counts Five through Eight involved transporting other illegal aliens to and from a "drop house" located on Cortada Street in El Monte, California.[3]

Rivera, the unavailable alien, visited the Cortada Street residence and may have been a material witness to the conduct alleged in Counts Five through Eight. Accordingly, those counts were properly dismissed under *Mendez-Rodriquez*.

There is, however, no evidence that Rivera could have offered testimony on Counts Three and Four. Although the district court, in entering judgment, found that Rivera was a witness to "incidents involv-

---

**3.** The only defendant named in Count Two of the indictment, which alleged transportation of an alien from the Scenic Motel, entered a guilty plea before the district's dismissal of charges against the defendant-appellees. Consequently, that count was not subject to the order of acquittal and dismissal.

ing defendants and constituting a large portion of the Government's case against the defendants", nothing in the record demonstrates any connection between Rivera and the events at the Scenic Motel. The defendants named in the third and fourth counts are, thus, in the same position as were the defendants in *Castellanos-Macharro, supra,* and *Sanchez-Murillo, supra.* They are not prejudiced by the government's deportation of a potential witness because Rivera's testimony could not conceivably benefit them.

Without some showing of a material relationship between defendants and witnesses whose unavailability is attributable to government action, the due process protections of *Mendez-Rodriquez* cannot be triggered. We reverse the dismissal of the third and fourth counts.

Finally, the conspiracy charge, Count One, specifies twelve overt acts that allegedly were undertaken in furtherance of the conspiracy. Six of the twelve acts involved aliens who were concealed at the Cortada Street "drop house". Because Rivera might have offered material testimony concerning those six acts, the conspiracy defendants are potentially prejudiced by his unavailability.

 Proof of an overt act is essential to demonstrating a conspiracy. Consequently, if the government were unable to show an overt act that did not involve the Cortada Street "drop house", proof of Cortada Street-related acts would be crucial, and Rivera's testimony would be material. But this potential prejudice is highly speculative: if the government were to prove any overt act not involving the Cortada Street operation, any testimony by Rivera would be immaterial.

This indefinite prejudice to the conspiracy defendants could be avoided if the trial court limited the government's proof of overt acts to those acts for which Rivera was not a material witness. Accordingly, we vacate the dismissal of Count One and remand the conspiracy charges for trial.[4]

Vacated and remanded for further proceedings.

4. The government raises two other arguments that lack merit. The record does not support the assertion that the defendants made no efforts to obtain information about Rivera. Rather, the pretrial hearing was devoted to the issue of unavailable witnesses. The government also asserts that Rivera was returned to Mexico innocently. However, the fact that repatriation was made in good faith is irrelevant. *See United States v. Orozco-Rico,* 589 F.2d 433 (9th Cir. 1978).