**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ricardo VALENZUELA–BERNAL,
Defendant-Appellant.**

No. 80–1573.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1981.

Decided June 5, 1981.

Craig Weinerman, San Diego, Cal., for defendant-appellant.

Bruce R. Castatter, Asst. U. S. Atty., argued, M. James Lorenz, U. S. Atty., Bruce R. Castetter, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before PREGERSON and REINHARDT, Circuit Judges, and HARDY,* District Judge.

PREGERSON, Circuit Judge:

Ricardo Valenzuela-Bernal was indicted for transporting illegal aliens. He moved to dismiss the indictment on the grounds that the Government violated his Fifth and Sixth Amendment rights by deporting several alien eyewitnesses without affording him an opportunity to interview them. The district court denied his motion; Bernal was convicted. We reverse.

*FACTS*

Valenzuela-Bernal (Bernal), a Mexican citizen, entered the United States without inspection on March 23, 1980. After his entry, Bernal was picked up by a "pollero" (a professional alien smuggler) and taken to a house in Escondido, California, where Bernal remained for six days. On March 30, Bernal, as the driver, and five other persons left the house by car en route to

---

* The Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation.

Los Angeles. As the car approached Temecula, California, Bernal, and presumably the passengers, saw a manned Border Patrol checkpoint. Bernal slowed the car to about five miles per hour. The border patrol agent spotted people lying on the floor of the car and signaled Bernal to stop. Bernal accelerated and the border patrol agents then pursued him. After a high speed chase on Interstate 15, Bernal stopped the car. He and the other occupants scrambled out of the car and took off in different directions. Bernal was immediately caught and arrested. All but two of the passengers were arrested shortly thereafter.

After his arrest, Bernal made a statement to the Border Patrol. When asked why he did not stop at the checkpoint, Bernal said:

> Well, I did stop but since I was bringing the people I already knew that I had had it. Too late, it was done.

At this time the Border Patrol had a total of four aliens in custody: Bernal and three of his passengers. The patrolmen interrogated all of the passengers, and, according to the patrolmen, all passengers testified that the defendant was the driver. They said nothing exculpatory about him. After discussing the case with an Assistant United States Attorney, the Border Patrol detained one passenger, Romero-Morales, and deported the other two to Mexico.

Bernal was indicted on one count of transporting an illegal alien, Romero-Morales, in violation of 8 U.S.C. § 1324(a)(2). Bernal attempted but failed to secure the appearances of the deported alien witnesses at his trial. He then moved to dismiss the indictment on the grounds that the Government's deportation of the alien witnesses violated his Fifth Amendment right to due process and Sixth Amendment right to call and confront witnesses. The trial judge denied Bernal's motion. After a bench trial on stipulated facts, Bernal was found guilty as charged and sentenced to five years in prison, of which all but 179 days were suspended.

## DISCUSSION

Bernal was convicted of violating 8 U.S.C. § 1324(a)(2) which prohibits the knowing transportation of any illegal alien who has been in the United States for less than three years. Bernal argues that the district court erred in denying his motion to dismiss the indictment. He contends that the district court should have applied the doctrine enunciated in *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971), to this case.

In *Mendez-Rodriguez*, the defendant was indicted for transporting seven illegal aliens. The Government detained three aliens and deported the others to Mexico without affording the defendant an opportunity to interview them. At trial the defendant testified that he was unaware that the passengers in his car were illegal aliens. The three aliens testified that they were Mexican nationals, who had entered this country without inspection, and that the defendant stopped his car and gave them a ride. Mendez-Rodriguez was convicted. In reversing his conviction, we held that the Government's action in placing potential alien witnesses beyond the court's subpoena power before the defendant was afforded an opportunity to interview and subpoena them violated the defendant's Fifth Amendment right to due process and Sixth Amendment right to compulsory process. The considerations prompting this decision were more fully explained in *United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974):

> The thrust of *Mendez-Rodriguez* is to prevent the basic unfairness of allowing the government to determine which witnesses will not help either side and then to release those witnesses, for all practical purposes, beyond the reach of the defendant. The vice lies in the unfettered ability of the government to make the decision unilaterally. A defendant has the right to formulate his defense uninhibited by government conduct that, in effect, prevents him from interviewing witnesses who may be involved and from determin-

ing whether he will subpoena and call them in his defense.

*Id.* at 423 (citations omitted).

The *Mendez-Rodriguez* doctrine sweeps broadly. As the dissent in that case pointed out, the court imposed no requirement of government misconduct or negligence before dismissal of an indictment is warranted. 450 F.2d at 6. Nor is a defendant required to show specific prejudice caused by the unavailability of the alien eyewitnesses. *Id.* at 5. In fact, the defendant in *Mendez-Rodriguez* conceded that he was unable to show that the missing witnesses would have offered testimony favorable to the defense. We found the defendant's concession

> understandable in view of the fact that appellant was, by Government action, deprived of the opportunity to interview said witnesses. Appellant couldn't know what these witnesses might say, if anything. We are in the same position as the appellant. We decline to indulge in any speculation that the interviews would, or would not, have been fruitful to the defense.

450 F.2d at 5.

This court, in applying *Mendez-Rodriguez*, however, has consistently emphasized that unless a defendant could "conceivably benefit" from the deported witness's testimony, the absence of the witness, brought about by the Government, is not a denial of due process warranting dismissal or reversal. *United States v. Gonzalez*, 617 F.2d 1358, 1363 (9th Cir.), *cert. denied sub nom. Patel v. United States,* —— U.S. ——, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *United States v. Orozco-Rico*, 589 F.2d 433, 435 (9th Cir. 1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1518, 59 L.Ed.2d 783 (1979). The conceivable benefit in *Mendez-Rodriguez* stemmed from the fact that the deported aliens were eyewitnesses to, and active participants in, the crime charged, so that there was a strong possibility that they could have provided material and relevant evidence concerning the events constituting the crime. *See United States v. McQuillan*, 507 F.2d 30, 32–33 (9th Cir. 1974).[1] Conversely, where a missing deported alien was not an eyewitness to the offense, we have been unwilling to assume that the alien's testimony could conceivably benefit the defendant.[2]

---

**1.** Some of our decisions discuss the "conceivable benefit" test in terms of a failure to establish prejudice from the absence of the deported alien witness. Nevertheless, the test remains the same: whether the defendant could conceivably benefit from the missing witness's testimony. Where we have held that *Mendez-Rodriguez* required a dismissal of the indictment, we concluded that the missing witnesses may have been able to testify in support of the accused. See *United States v. Gonzales*, 617 F.2d 1358 (9th Cir. 1980); *United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974). Where we did not find that *Mendez-Rodriguez* warranted the dismissal of the indictment we held that the Government's actions were not unilateral actions depriving the defendant of access to the witness. *See United States v. Gonzales*, 617 F.2d 1358 (9th Cir. 1980); *United States v. Hernandez-Gonzalez*, 608 F.2d 1240 (9th Cir. 1979); *United States v. Ballesteros-Acuna*, 527 F.2d 928 (9th Cir. 1975); *United States v. Francisco-Romandia*, 503 F.2d 1020 (9th Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *United States v. Carrillo-Frausto*, 500 F.2d 234 (9th Cir. 1974); *United States v. Lomeli-Garnica*, 495 F.2d 313 (9th Cir. 1974); *United States v. Verduzco-Macias*, 463 F.2d 105 (9th Cir.), *cert.*

denied, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *United States v. Peyton*, 454 F.2d 213 (9th Cir. 1971). The only gloss that has been added to the *Mendez-Rodriguez* doctrine is that if the defendant had a real opportunity to question a witness but failed to do so, then the argument that defendant has been deprived of Fifth or Sixth Amendment rights is unavailing even if all the elements of the *Mendez-Rodriguez* doctrine are otherwise present. *See United States v. Castillo*, 615 F.2d 878 (9th Cir. 1980); *United States v. Valdez*, 594 F.2d 725 (9th Cir. 1979); *United States v. Romero*, 469 F.2d 1078 (9th Cir. 1972), *cert. denied*, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973). In this case the defendant was not given an opportunity to interview the missing alien witnesses before their deportation.

**2.** *See, e. g., Gonzales* (missing alien not eyewitness to the offense; *Mendez-Rodriguez* not controlling); *United States v. Martinez-Morales*, 632 F.2d 112 (9th Cir. 1980) (missing alien not potential witness to criminal act; *Mendez-Rodriguez* not controlling); *United States v. Sanchez-Murillo*, 608 F.2d 1314 (9th Cir. 1979) (no evidence that missing alien, who was not present at defendant's arrest, witnessed any of the acts of which defendant was

■ Application of the *Mendez-Rodriguez* doctrine requires reversal of the district court's decision. As in *Mendez-Rodriguez*, the Government here selected certain aliens for detention while returning others to Mexico; the deported aliens were eyewitnesses to, and active participants in, the crime charged, thus establishing a strong possibility that they could have provided material and relevant information concerning the events constituting the crime. Moreover, the defendant asserted the defense that he was unaware of his passengers' status as illegal aliens. This defense might have been corroborated by the missing witnesses.

We cannot accept the Government's argument that strict application of the *Mendez-Rodriguez* doctrine has never been followed in this circuit. A survey of the *Mendez-Rodriguez* progeny shows that we have adhered to the essential elements of the original case. Those elements are (1) unilateral Government action denying a defendant access to a witness; and (2) prejudice, *i. e.*, loss of a conceivable benefit to the defendant from the missing witness's testimony.[3]

■ Alternatively, the Government argues that Bernal's statement to the Border Patrol was a confession to the crime charged, and hence no defense theory could have been corroborated by the returned witnesses. We do not agree. Nowhere in Bernal's statement does he acknowledge that the passengers in the car were aliens who had been in the United States for less than three years. Even inferring from Bernal's statement that Bernal knew the passengers were aliens would merely place him on equal footing with the defendant in *Mendez-Rodriguez*, who also knew the hitchhikers were aliens. The crux of the case, rather, is whether Bernal knew the passengers were *illegal* aliens who had been in this country for less than three years. The Government never asked Bernal if he knew his passengers were illegal aliens, and nowhere in his statement does Bernal confess such knowledge. Nor did the district court find that Bernal had confessed to the knowing transportation of illegal aliens.[4] It is this knowledge of the illegal status of the aliens which is essential to the crime charged.

charged; *Mendez-Rodriguez* not controlling); *United States v. Castellanos-Machorro*, 512 F.2d 1181 (9th Cir. 1975) (no evidence that the released aliens witnessed the acts of which the defendants stood accused; *Mendez-Rodriguez* not controlling); *United States v. McQuillan*, 507 F.2d 30 (9th Cir. 1974) (missing aliens did not witness the acts charged in the indictment; *Mendez-Rodriguez* not controlling).

3. *United States v. Hernandez-Gonzalez*, 608 F.2d 1240 (9th Cir. 1979), did not modify the "conceivable benefit" test. In *Hernandez-Gonzalez*, the defendant was convicted of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2). At trial the Government was able to produce only four of the five aliens who were in the defendant's car when it was stopped by the border patrol. The fifth escaped from Government custody by trickery. The defendant challenged his conviction on the ground that the absence of the fifth witness deprived him of his Fifth and Sixth Amendment rights. On appeal, we held that the missing witness was not unavailable due to unilateral Government action. We further stated by way of dictum that "equally significant" to the decision not to apply *Mendez-Rodriguez* was the "remote possibility of prejudice" to the defendant. Our discussion of prejudice in that case,

however, was unnecessary to the decision and therefore is not controlling.

4. The government overlooks the distinction between a confession and an admission. A confession is a direct acknowledgement of guilt of the crime charged whereas an admission is a "'statement of pertinent facts which, in connection with proof of other facts, tends to prove guilt of the crime charged.'" *United States v. Wertz*, 625 F.2d 1128, 1133 n.7 (4th Cir.), *cert. denied,* ―― U.S. ――, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980), *quoting United States v. Cobb*, 448 F.Supp. 886, 893 (D.S.C.), *aff'd* 568 F.2d 774 (4th Cir. 1977); *Gladden v. Unsworth*, 396 F.2d 373, 375 n.2 (9th Cir. 1968). In other words, if a statement "is only as to some of the facts which show guilt of the crime, it is characterized as an admission." J. McBaine, CALIFORNIA EVIDENCE MANUAL § 843, at 218 (2d ed. 1960). Bernal did not confess to transporting aliens with knowledge that they had illegally been in this country less than three years. At most, his statement establishes only one element of the crime—transporting—and is properly labeled an admission. *Gladden v. Unsworth, supra; United States v. Bennett*, 495 F.2d 943, 948 n.22 (D.C.Cir.1974).

*CONCLUSION*

The *Mendez-Rodriguez* doctrine applies to the facts of this case. The district court's denial of appellant's motion to dismiss the indictment is REVERSED.

REVERSED.