UNITED STATES of America,

v.

Juan Carlos OROZCO–GONZALEZ.

No. MO:98–CR–139.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Aug. 13, 1999.

John S. Klassen, Assistant United States Attorneys, Midland, TX, for U.S.

Paul K. Williams, Kirk & Williams, Midland, TX, for defendant.

## AMENDED MEMORANDUM ORDER AND OPINION DENYING MOTION TO SUPPRESS

FURGESON, District Judge.

Before the Court are the Defendant's Motion to Suppress, filed March 12, 1999, and the Government's Response, filed March 29, 1999. The Court held a hearing on this matter at which it entertained testimony as well as the excellent arguments of counsel. After due consideration, the Court DENIES the Defendant's Motion to Suppress.

## I. BACKGROUND

The Government charged the Defendant with illegal re-entry after a Border Patrol Agent stopped him on Interstate 20 near Midland, Texas. The Defendant is not a citizen of this country, has been deported before, and re-entered the United States without permission. Defendant moves to suppress "all evidence obtained as a result" of the allegedly unreasonable stop. The Government answers that, even if the stop was unreasonable, applicable case law does not require this Court to suppress the "identity" of the Defendant, which is the only evidence arguably obtained as a result of the stop.

Although the Government was willing to proceed on the assumption that the stop was illegal, both parties agreed that the Court should nevertheless entertain the testimony of the Border Patrol Agent who made the stop in order to complete the record. Border Patrol Agent Guadalupe Falcon testified that he began his service fifteen years ago in California, and recently transferred to the Midland–Odessa area. This case arose while Agent Falcon was conducting a routine observation of traffic in his marked unit traveling eastbound along Interstate 20 somewhere in the vicinity of the twin cities of Midland–Odessa on December 12, 1998. At approximately one p.m., Agent Falcon approached the Defendant's 1996 Pontiac Grand Am from the rear. Agent Falcon testified that there was nothing inherently suspicious about the vehicle itself. He observed two male Hispanics seated in the front of the vehicle. As Agent Falcon passed the vehicle in the passing lane of the four lane divided highway, he slowed his cruiser to pace the Defendant's vehicle so that he could observe the occupants. Falcon testified that neither occupant would make eye contact with him. Instead, both stared straight ahead. Agent Falcon further testified that the vehicle did not appear to be

breaking any traffic laws and was going with the flow of traffic.

Agent Falcon then proceeded past the vehicle until he was far enough ahead that he could pull over to the shoulder and stop before the Defendant would pass him again. As the Defendant passed the marked unit, Agent Falcon noticed that the vehicle seemed to have slowed considerably. The occupants again did not make eye contact or recognize the Agent's presence, but rather stared straight ahead. Agent Falcon again pulled in behind the Defendant's vehicle, and then pulled abreast of the vehicle in the passing lane. When neither the Defendant nor the occupant would make eye contact, Agent Falcon determined to make a stop to conduct a routine immigration check. The stop occurred at approximately 235 miles from the nearest border crossing.

When asked to articulate his reasonable suspicions, Agent Falcon testified that the failure to make eye contact and the apparent reduction in speed aroused his suspicion based on his extensive experience in the apprehension of thousands of illegal aliens in California.

## II. DISCUSSION

### A. The Stop Was Unreasonable

■ The Supreme Court set forth the manner in which roving Border Patrol agents could validly stop vehicles traveling near the border. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Under *Brignoni–Ponce,* an agent may stop and briefly investigate a vehicle and its occupants if the agent is "aware of specific articulable facts, together with [the] rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id.* at 884, 95 S.Ct. 2574. The Fifth Circuit has further narrowed the *Brignoni–Ponce* balancing test in this Circuit. *United States v. Rubio–Hernandez,* 39 F.Supp.2d 808 (W.D.Tex.1999). In the Fifth Circuit, a "vital element" of reasonable suspicion is the belief that the suspect vehicle originat-

ed at the border. *Id.* at 810. This vital element is absent when the stop is made more than fifty miles from the border. *Id.* Because this stop was made more than fifty miles from the border, this vital element is absent, and the Court must review the remaining factors "charily." *Id.*

The avoidance of eye contact cannot be a factor in the Fifth Circuit. *Id.* at 818. This leaves only the suspicion based upon the slowing of the vehicle after observing a marked patrol unit. Viewed charily this factor alone does not give rise to reasonable suspicion. The stop of the Defendant's vehicle was invalid.

### B. The Defendant's Presence in this Country Is Not Suppressible Evidence

■ This does not end the inquiry, for there is no evidence to be suppressed in this case. The Defendant contends that, without the illegal stop of his vehicle, the Border Patrol would never have detained him and would not have the "evidence" of his presence, in the form of his person, necessary for a prosecution for illegal reentry. Although there seems to be no Fifth Circuit case directly on point, the Ninth Circuit has more than once addressed the issue. *United States v. Guzman–Bruno,* 27 F.3d 420 (9th Cir.1994); *United States v. Orozco–Rico,* 589 F.2d 433 (9th Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1518, 59 L.Ed.2d 783 (1979).

In *Guzman–Bruno,* the government did not contest the fact that the initial detention of the defendant was illegal. 27 F.3d at 421. The court determined that the defendant's identity "need not be suppressed merely because it is discovered as the result of an illegal arrest or search." *Id.* The defendant was convicted under the same statute applicable to the instant case. *Id.* at 422. The *Orozco–Rico* court, dealing with a slightly different matter, noted that section 1326 was a "status-type offense[ ]. [Defendant's] mere presence in the country, as an illegal alien and as a former deportee, was sufficient to constitute the offense[ ] with which he was

charged." 589 F.2d at 435 (finding defendant could not have benefitted from testimony of illegal aliens caught in his car because, even if stop were illegal, prosecution for illegal re-entry would be valid).

In reaching this conclusion, the Ninth Circuit pointed to the language of several Supreme Court decisions not directly addressing the issue. Reviewing a civil deportation decision, the Supreme Court found that the fact that an arrest may have been illegal would not prevent introduction of the "evidence" necessary, to deport a defendant for his illegal presence in this nation. *Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 1050–1, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (4–4–1 decision). Recognizing that the exclusionary rule generally applies to bar statements and evidence obtained "as a result of an unlawful, warrantless arrest" in a criminal proceeding, the Supreme Court nevertheless held that the suppression would not be had in a civil deportation proceeding. *Id.* at 1040–41, 1051, 104 S.Ct. 3479. Although the Supreme Court limited its ruling to a civil deportation hearing, the language used indicated that the release of an illegal alien as the result of an unlawful seizure was not mandated. *Id.* at 1047, 104 S.Ct. 3479. "[The defendant's] release within our borders would immediately subject him to criminal penalties." *Id.* The court also indicated that release was not mandated in the face of an ongoing crime. "The constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime." *Id.* The Court reached this conclusion after noting that the " 'body' or identity of a defendant ... in a *criminal* or *civil* proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest ... occurred." *Id.* at 1039, 104 S.Ct. 3479 (emphasis added).

In reaching this conclusion, the Supreme Court pointed to several prior decisions detailing egregious governmental conduct that far exceeds the relatively minor blunder made in the instant case. *Eg., Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) In *Frisbie*, the Michigan police allegedly went to Illinois, found and seized Frisbie by force, and took him across state lines without any authority and in violation of federal kidnaping statutes in order to try him for a crime in Michigan state court. *Id.* at 520, 72 S.Ct. 509. The Supreme Court found that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' " *Id.* at 522, 72 S.Ct. 509; *see also, Matta–Ballesteros v. Henman*, 896 F.2d 255 (7th Cir.1990) (finding fact that U.S. Marshals may have kidnaped defendant in Honduras and tortured him with stun gun applied to his genitals did not impact upon the government's authority to try him for a crime).

In the case at hand, the Defendant continues to violate the law under which he is charged by his continued illegal presence in this country. Such presence, when combined with the business records of the Immigration Service, is evidence of a violation of our nation's criminal laws, and no order suppressing the evidence can change the continuing nature of the violation. Defendant urges the Court to allow him to be deported administratively and to "suppress" his identity in the criminal case pending against him. This the Court is unwilling to do, and, if it properly reads Supreme Court language, is not required to do. The motion to suppress will accordingly be denied.

## III. CONCLUSION

Although the Court does not condone any violation of the protections guaranteed by our "most wonderful work," [1], the Court is bound by what appears to be clear precedent in this area of the law. Defendant urges that this Court distinguish the cases

---

1. Thomas E. Baker, *The Most Wonderful Work: Our Constitution Interpreted* (1996).

cited herein, and both the Government and the Defendant admit that there is no clear Fifth Circuit precedence in this matter. Although the facts of the Supreme Court cases do seem distinguishable, the language used in the cases makes it difficult for this Court to see how it could properly grant the Defendant's request. Finally, Defendant argues that since the Supreme Court decision which contains the strongest language is a fifteen year old 4–4–1 decision, it should be discounted. The Court declines the invitation. Instead, the Court notes that an appeal to the Fifth Circuit might provide a more ready answer to the issue at hand.

The Motion to Suppress is DENIED.